**STATE OF TENNESSEE et al. v. UNITED STATES et al.**

Civ. No. 1595.

United States District Court
M. D. Tennessee, Nashville Division.

May 18, 1953.

Alfred T. McFarland, General Counsel, Railroad and Public Utilities Commission of Tennessee, Nashville, Tenn., for plaintiffs.

Robt. H. Marquis, Tennessee Valley Authority, Knoxville, Tenn., for intervenor in support of the complaint.

A. O. Denning, U. S. Atty., Nashville, Tenn., and S. R. Howell, Assistant Chief Counsel, Interstate Commerce Commission, Washington, D. C., for defendants.

C. P. Reynolds, Washington, D. C., James A. Bistline, Washington, D. C., and Robert E. Webb, Louisville, Ky., for intervenors in opposition to the complaint.

Before MARTIN, Circuit Judge, and DAVIES and BOYD, District Judges.

PER CURIAM.

The cause was submitted upon the pleadings, exhibits, and argument of counsel for plaintiffs, intervenors, and defendants, and, after due consideration thereof, the Court enters its Findings of Fact and Conclusions of Law, as follows:

Findings of Fact

1. In a case known as Ex Parte 166, the Class 1 rail carriers applied to the Interstate Commerce Commission (hereinafter called the ICC) for a general increase of their freight rates and charges. The ICC, in response to the application, granted an increase of 25 per cent in freight rates and charges generally in southern territory, with certain modifications as respects particular commodities. The ICC granted an increase in southern territory interstate coal rates of 20 per cent, subject to a maximum of 40 cents per net ton, and an increase of 25 per cent in southern territory interstate rates on wood.

2. Subsequent to the final decision of the ICC in Ex Parte 166 the rail carriers operating in Tennessee petitioned the Railroad and Public Utilities Commission of Tennessee (hereinafter called the Tennessee Commission) for the same percentage increases in Tennessee intrastate rates (with certain exceptions as to some commodities) which the ICC had granted in interstate rates. All of these carriers requested the full interstate increases in Tennessee intrastate coal rates. They also originally requested the full interstate increases in wood rates, but the Southern and the C.N.O. & T. P. withdrew their request for any intrastate increase in pulpwood rates having previously applied to the Tennessee Commission for authority to put in to effect in Tennessee as soon as certain contingencies had been met, intrastate rates on pulpwood lower than those previously authorized by the Tennessee Commission. Pulpwood rates in southern territory have been based on the so-called Roanoke Rapids scale, adopted by the Seaboard Airline Railroad in 1909. Since that date, there have been authorized increases in interstate pulpwood rates of 81.5 per cent above the Roanoke Rapids scale, and increases in intrastate rates in various southern states ranging from 19.9 per cent in South Carolina to 67.9 per cent in Mississippi. The increases authorized in Tennessee intrastate rates are 59.4 per cent. On November 1, 1951, a group of southern rail carriers, including the Southern, C. N. O. & T. P., Seaboard Airline, and a number of other railroads, published rates on pulpwood for general application both interstate and intrastate in southern territory based on the Roanoke Rapids scale plus 50 per cent. The ICC has instituted an investigation as to the lawfulness of these new rates, but it refused to grant an application of the Atlantic Coast Line and Louisville and Nashville Railroads that they be suspended pending the outcome of the investigation, and these rates are now actually in effect for movements over the railroads which have published them. These rates are lower than those authorized by the Tennessee Commission for intrastate application in Tennessee.

3. The Tennessee Commission, following extended hearings, has issued orders authorizing the petitioning carriers to increase their Tennessee intrastate rates in the same percentages and amounts as were authorized by the ICC in Ex Parte 166 for southern territory interstate rates except in the case of certain commodities as to which the railroads themselves did not seek the full interstate increases, a few others on which there has not been shown to be any actual carload movements intrastate in Tennessee, and coal and wood. On coal, the Tennessee Commission authorized increases of 10 per cent in lieu of the 20 per cent authorized interstate by the ICC, subject to the same 40 cents per net ton maximum authorized interstate by the ICC. On

wood, it authorized 15 per cent in lieu of the 25 per cent authorized interstate by the ICC.

4. In a later case known as Ex Parte 168 the ICC ordered further increases in southern territory interstate rates of 10 per cent, subject to certain exceptions and maxima with respect to particular commodities. Thereafter, on petition of the rail carriers operating in Tennessee, the Tennessee Commission, after hearing, granted for intrastate application in Tennessee increases 10 per cent over the then existing rates which is the percentage granted by the ICC in Ex Parte 168, but then again refused to authorize increases in coal and wood rates corresponding fully to those authorized by the ICC in Ex Parte 166 proceeding.

5. On November 2, 1950, the rail carriers operating in Tennessee petitioned the ICC under Section 13(4) of the Interstate Commerce Act, 49 U.S.C.A. § 13(4) for an order requiring, in substance, that Tennessee intrastate coal and wood rates be increased by the amounts necessary to reflect the same percentage increases as the ICC had authorized in Ex Parte 166 for interstate application in southern territory.

6. A hearing was held on the petition of the rail carriers on March 7, 8, and 9, at Nashville, Tennessee, before ICC Examiner Andrew C. Wilkins. At the hearing, the carriers withdrew any request for increases in coal rates to Nashville and Old Hickory, Tennessee, and to intermediate points taking the same rates, to all of which points the carriers had voluntarily reduced rates below the level authorized by the Tennessee Commission. Corresponding reductions were also made from interstate mines to these destinations. Thereafter the Examiner issued a proposed report in which he found that no increases should be ordered by the ICC in Tennessee intrastate rates on coal or wood.

7. On May 19, 1952, following the filing of exceptions to the Examiner's proposed report and oral argument, the ICC, Commissioner Splawn dissenting, issued a report finding those Tennessee intrastate rates on coal and wood (except the rates to Nashville, Old Hickory, and intermediate points and the pulpwood rates of the

Southern Railway and C. N. O. & T. P. Railroad) to be violative of Section 13(4) of the Interstate Commerce Act. It thereafter, on August 19, 1952, issued an order denying petitions for reconsideration and directing the carriers to put into effect new intrastate rates on coal and wood reflecting the same increases as those previously granted by the ICC in interstate rates on those commodities. The ICC excepted from its order rates on coal to Nashville, Old Hickory and intermediate points taking the same rates. As to pulpwood, the ICC excepted from its order the rates of the Southern and the C. N. O. & T. P., which rates are below the level authorized by the Tennessee Commission.

8. The railroads operating in Tennessee thereafter published tariff supplements under which the increases ordered by the ICC would have become effective October 25, 1952. The Tennessee Commission, on October 10, 1952, instituted the present action seeking to enjoin and set aside the ICC's report of May 19, 1952, and order of August 19, 1952. The United States of America adopted a neutral position with respect to the complaint. The Tennessee Valley Authority intervened in support of the complaint. The rail carriers, the ICC, and some of the Kentucky coal operators intervened in opposition to the complaint.

The Court adopts the following findings of the Interstate Commerce Commission, all of which findings are supported by substantial evidence:

9. "1. The conditions incident to the intrastate transportation of freight in Tennessee are not more favorable than those incident to the interstate transportation of freight between points in Tennessee and between Tennessee, on the other hand, and the adjoining States in southern territory, on the other."

This finding of the Commission is supported by the evidence (Tr. 32–56), and by many previous decisions of the Commission, among which are, Southern Glass Rate Investigation, 100 I.C.C. 513, 623; Southern Cement Rates, 132 I.C.C. 427, 455; Sand, Gravel, Slag, Stone and Chert, 165 I.C.C. 731; Increases in Tennessee

Freight Rates and Charges, 272 I.C.C. 625, 646.

10. "2. The amounts and percentages by which interstate freight rates and charges between points in Tennessee and points in adjoining States were increased, as authorized in Ex Parte Nos. 166 and 168, are just and reasonable."

Finding No. 2 is substantially the same as the finding made in Ex Parte No. 166, increased Freight Rates, 1947, 270 I.C.C. 403, 456 and Ex Parte No. 168, Increased Freight Rates, 1948, 276 I.C.C. 9, 113.

11. "3. As to coal, there is active competition between persons and localities engaged in interstate commerce between points in Tennessee and points in other States, on the one hand, and persons and localities engaged in intrastate commerce in Tennessee, on the other."

The above finding is supported by the evidence cited on pages 47–55, inclusive, of the Commission's report in this case. The references to the pages of the transcript where the evidence will be found are shown in Appendix C to the Brief of the I.C.C., pages 11–14, 18–22, 23–29, 38–42.

12. "4. The intrastate rates and charges in Tennessee on chemical, acid, pulp, and fuel wood and on coal, except to Nashville and Old Hickory and intermediate points taking the same rates, are not contributing their fair share of the revenues required by the respondents to enable them to render adequate and efficient service and to operate profitably; are causing undue, unreasonable, and unjust discrimination against interstate commerce; and as to coal, with the exception noted, are causing undue preference of and advantage to persons and localities in intrastate commerce, and undue prejudice and disadvantage to persons and localities in interstate commerce."

Finding No. 4 is supported by Findings Nos. 1, 2, 3, and 6 and by evidence showing the railroads' need for additional revenue, which evidence is summarized in the Commission's report (286 I.C.C. 45–46, 58, and Appendix B) and will be found in the record, Tr. 330–403.

13. "5. The unjust discrimination and undue preference and prejudice herein found to exist should be removed by applying to the Tennessee intrastate rates and charges on the commodities described in finding 4 the same respective increases as authorized thereon in Ex Parte Nos. 166 and 168 which are and for the future may be maintained by the respondents on like interstate traffic between points in Tennessee and points in adjoining southern States; provided that no intrastate rate or charge on pulpwood shall be increased so that it will exceed the lowest level of the corresponding interstate rates on pulpwood maintained by the same carrier to or from Tennessee points."

Finding No. 5 like Finding No. 4 is an ultimate finding, and is supported by all other subsidiary findings and is an exercise by the Commission of its statutory power to eliminate the unjust discrimination against interstate commerce and the undue preference and prejudice as between persons and localities found to exist.

14. "6. The establishment of increases in intrastate rates and charges as provided in finding 5 will not result in unreasonable rates or charges, or rates and charges that are unreasonable in relation to interstate rates and charges, and will substantially increase the respondents' revenues."

Finding No. 6 is supported by the evidence, 286 I.C.C. 44–45, 55, 58–59; Tr. 8–9, 114–115, 134–135, 167, 175, and 205. The amount of the revenue the railroads will receive from the increases ordered in the intrastate rates on coal and wood was estimated at approximately $135,000 per year (286 I.C.C. 44).

15. "7. The assailed rates and charges, except as appears from the foregoing findings with respect to coal and wood, are not shown to cause undue or unreasonable advantage, preference, or prejudice, or to cause un-

due, unreasonable, or unjust discrimination against interstate commerce."

The findings of the Commission also included a saving clause reading as follows:

"These findings and conclusions are without prejudice to the right of the authorities of the State of Tennessee, or any other interested party, to apply for a modification thereof as to any specific intrastate rate or charge affected thereby on the ground that such rate or charge is not related to the interstate rates or charges on like traffic in such a way as to contravene the provisions of the Interstate Commerce Act."

The Court finds that the findings of the Commission are supported by substantial evidence on the record as a whole.

### Conclusions of Law.

1. The Court concludes that it has jurisdiction of this suit under Sections 1336, 2284 and 2321–2325 of Title 28 of the United States Code and Section 17(9) of the Interstate Commerce Act, 49 U.S.C.A. § 17(9).

2. The Court concludes that the Interstate Commerce Commission had jurisdiction to enter the order complained of under Section 13 of the Interstate Commerce Act, 49 U.S.C.A. § 13.

Railroad Comm. of Wisconsin v. Chicago, B. & Q. R. Co., 257 U.S. 563, 42 S.Ct. 232, 66 L.Ed. 371.

3. The findings of the Interstate Commerce Commission are adequate to support the challenged order of the Commission.

United States v. Louisiana, 290 U.S. 70, 54 S.Ct. 28, 78 L.Ed. 181; King v. United States, 344 U.S. 254, 73 S.Ct. 259, 97 L.Ed. —.

4. The Court concludes that the Commission order is valid, being supported by adequate findings based on substantial evidence; that the application for an injunction should be denied, and the complaint should be dismissed.

Judgment accordingly.